# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

JOYCE BRISTOW                                                PLAINTIFF

VERSUS                          CIVIL ACTION NO: 5:09-cv-66-DCB-JMR

LEZLI BASKERVILLE                                            DEFENDANT

## OPINION AND ORDER

This cause is before the Court on the Defendant Lezli Baskerville's ("defendant" or "Ms. Baskerville") Motion for Summary Judgment [docket entry no. 31] filed on February 5, 2010 and Supplemental Motion for Summary Judgment [docket entry no. 36] filed on February 17, 2010. Plaintiff Joyce Bristow ("plaintiff" or "Ms. Bristow") filed her Responses [docket entry nos. 41, 42] to these motions on March 5, 2010. Having carefully considered said Motions, Responses, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. Facts and Procedural History[1]

This cause of action arises from an alleged extra-marital relationship between the defendant and the plaintiff's ex-husband, Clinton Bristow ("Mr. Bristow"), who is now deceased. The plaintiff originally married Mr. Bristow in 1975. During their first marriage, they adopted a daughter, Maya Bristow, who was born

---

[1] These facts are taken from the plaintiff's complaint and her deposition on February 5, 2010.

in 1980. They were married for fifteen years until they divorced in 1990. In 1995, Mr. Bristow accepted a position as President of Alcorn State University in Lorman, Mississippi. Although Mr. Bristow had a residence on the University's campus, he also retained a residence in Chicago, Illinois, and would travel back and forth between Mississippi and Chicago. In 1996, Mr. Bristow and Ms. Bristow remarried in Sheboygan, Wisconsin. Also in 1996, Ms. Bristow accepted a position as an area superintendent for the Chicago Public Schools. Therefore, in order to see each other, Ms. Bristow would travel to Mississippi and Mr. Bristow would travel to Chicago. According to Ms. Bristow, they would travel to see each other at least twice a month.

Beginning in fall of 1998, their relationship began to change. Ms. Bristow testified that during that time, Mr. Bristow requested that she not travel to Mississippi for homecoming celebrations at Alcorn State. She stated that this request was unusual because homecoming celebrations are significant events which she routinely attended. Ms. Bristow also testified that Mr. Bristow decided not to return to Chicago for Christmas in 1998. At that point, Ms. Bristow stated that the relationship went "down hill." Mr. Bristow returned to Chicago only one time after 1998 for the funeral of Ms. Bristow's father in March 1999. During the spring of 1999, Ms. Bristow testified that they both agreed to a divorce which Ms. Bristow filed for in Chicago on July 30, 1999. The divorce was

finalized and complete on December 12, 2001.

At her deposition, Ms. Bristow testified that she first became aware of Ms. Baskerville's relationship with Mr. Bristow after divorce proceedings began. She testified that Mr. Bristow and Ms. Baskerville made their relationship public in January 2001 at the Indigo Ball in Chicago.[2] She testified that she was "saddened, disappointed," but knew that her relationship with Mr. Bristow had ended.[3] She also testified that she did not personally meet the defendant until 2002, after the divorce was finalized. She testified that she spoke with the defendant several times after the divorce at different events in Chicago prior to Mr. Bristow's death.

In 2006, Mr. Bristow died on the campus of Alcorn State University in Claiborne County, Mississippi. Thereafter, his estate proceedings began in the Chancery Court of Claiborne County, Mississippi. Thereafter, the plaintiff commenced this suit on November 5, 2008, in the Circuit Court of Claiborne County, Mississippi. In the complaint, the plaintiff seeks undisclosed actual and punitive damages arising from claims of alienation of affection, adultery, as well as negligent and intentional

---

[2] According to Ms. Bristow, the Indigo Ball is a black tie event sponsored by Indigo Magazine in Chicago.

[3] The Court notes that the relationship between Mr. Bristow and the defendant was made public in January 2001, prior to the finalization of the divorce between Ms. Bristow and Mr. Bristow on December 12, 2001.

infliction of emotional distress.  Specifically, the plaintiff alleges that during Mr. Bristow's estate proceedings Ms. Baskerville testified that her relationship with Mr. Bristow began nine (9) years prior to the proceedings.  The plaintiff alleges that Ms. Baskerville and Mr. Bristow began their relationship in 1997 before she filed for divorce.  The plaintiff also alleges that Ms. Baskerville was aware that Mr. Bristow was married and that the alleged adulterous relationship caused the eventual dissolution of the plaintiff's marriage.

On April 21, 2009, the defendant removed this action to the Federal District Court for the Southern District of Mississippi stating that the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The plaintiff did not seek to remand the case.

In the summary judgment motions before the Court, the defendant asserts that the plaintiff's claims are barred by the statute of limitations.  That is, the defendant states that the plaintiff's claim was filed outside the three year statute of limitations period set forth in section 15-1-49(1), Miss. Code Ann (1972).  The defendant also argues that the limitations period may not be tolled by the latent injury provision under section 15-1-49(2).  Specifically, the defendant argues that in <u>Hancock v. Watson</u>, the Court held that the affections of the spouse wronged by the affair are irrelevant to a determination of when the cause of

4

action for alienation of affection accrues. 962 So.2d 627, 631 (Miss. Ct. App. 2007). As a result, the defendant contends that the plaintiff's knowledge of her alleged injury is irrelevant to the accrual of the cause of action and the commencement of the limitations period.

In her response, the plaintiff argues that she was not aware of the relationship between Mr. Bristow and Ms. Baskerville until the 2007 estate hearing in which Ms. Baskerville testified about the relationship. Therefore, the plaintiff argues that she did not know or have reason to know about her injury until that time. As a result, she contends that she brought this action within three years after the accrual of the cause of action pursuant to the latent injury provision of section 15-1-49(2).

On May 5, 2010, this Court issued an Order requiring the defendant to clarify her summary judgment motions as to the plaintiff's claims for adultery and intentional and negligent infliction of emotional distress. On May 7, 2010, the defendant filed a Memorandum in Support [docket entry no. 52] of her motions for summary judgment. Therein, she argues that a claim for adultery is not valid under Mississippi law, and the plaintiff's claims for intentional and negligent infliction of emotional distress are barred by the statute of limitations. The plaintiff failed to file a timely response. These motions are now before the Court.

## II. Summary Judgment Standard

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[4] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita

---

[4] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

6

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The non-movant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

1. *Alienation of Affection Claim*

The tort of alienation of affection requires the plaintiff to prove "(1) wrongful conduct of the defendant; (2) loss of affection or consortium, and; (3) causal connection between such conduct and the loss." Hancock v. Watson, 962 So.2d 627, 630 (Miss. Ct. App. 2007)(citing Bland v. Hill, 735 So.2d 414, 417 (Miss. 1999)). This cause of action is subject to a three-year statute of limitations. Hancock, 962 So.2d at 631 (citing Carr v. Carr, 784 So.2d 227, 230 (Miss. Ct. App. 2000); see also MISS. CODE ANN. § 15-1-49. Under Mississippi law, "[a] claim of alienation of affection accrues when the alienation or loss of affection is finally accomplished." Id. (quoting Carr, 784 So.2d at 229-30). Therefore, the accrual of the claim "occurs when the affections of the spouse involved in the

extramarital relationship are alienated." Id. "The affections of the spouse wronged by the affair are irrelevant to a determination of when the cause of action accrued." Id. That is, whether the affections of Ms. Bristow toward Mr. Bristow were altered or alienated as a result of the alleged extramarital affair does not affect the accrual of the claim.

In the instant case, the plaintiff argues that she was not aware of the alleged extramarital affair between Mr. Bristow and the defendant until she heard Ms. Baskerville's testimony on December 13, 2007 at Mr. Bristow's estate hearing. As a result, the plaintiff contends that her cause of action did not accrue until December 13, 2007. However, from the plaintiff's admission during her deposition on February 5, 2010, she became aware of the relationship between Mr. Bristow and Ms. Baskerville after she started divorce proceedings and at a time when the relationship was made public in January 2001, before her divorce was finalized on December 12, 2001. Ms. Bristow stated that when the relationship was exposed at the Indigo Ball in Chicago in January 2001, "the whole town was talking and still talking." (Depo. Joyce Bristow 32:6 to 33:10, taken on Feb. 5, 2010). She testified that she knew at that time that her marriage with Mr. Bristow would end because Mr. Bristow had "moved on with Lezli Baskerville." Id. As a result, her cause of action against the defendant accrued no later

than January 2001.[5]

It is apparent after reviewing the facts that the plaintiff knew or by reasonable diligence should have discovered that the defendant was involved with Mr. Bristow before the divorce was finalized and long before Ms. Baskerville testified in 2007 at Mr. Bristow's estate hearing. The Mississippi Supreme Court has stated the purpose of statutes of limitations as follows:

> The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of them.
>
> Accordingly, the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period. These statutes of repose apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case. The establishment of these time boundaries is a legislative prerogative. That body has the right to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period . . . .

Mississippi Dept. of Public Safety v. Stringer, 748 So.2d 662, 665-66 (Miss. 1999).

---

[5] The facts of this case indicate that Mr. Bristow's affections were likely alienated prior to the date Mr. Bristow made the relationship public, possibly as far back as July 30, 1999 when the plaintiff filed for divorce. After March 1999, the plaintiff testified that Mr. Bristow did not return to Chicago to see her. It is clear, however, that the affections of Mr. Bristow were alienated, if at all, no later than January 2001.

9

In the case at bar, rather than filing her claim within three years of having knowledge of her injury and knowledge of the facts giving rise to the claim, Ms. Bristow waited seven (7) years. Moreover, the plaintiff did not bring the claim until she discovered at Mr. Bristow's estate hearing that Ms. Baskerville was the named beneficiary on Mr. Bristow's life insurance policy, the beneficiary on his retirement accounts, and the beneficiary of other assets held by Mr. Bristow. In her complaint, the plaintiff seeks these and other of her deceased ex-husband's assets as damages. The Court finds that the three year statute of limitations prescribed by § 15-1-49 of the Mississippi Code bars the plaintiff's claims. As a result, the defendant's motions are well-taken.

An issue discussed in the parties briefs is whether the latent injury provision of § 15-1-49(2) applies to the instant action and tolls the statute of limitations. Specifically, may alienation of affection be classified as a latent injury? The Mississippi courts have not conclusively decided this issue. In <u>Hancock</u>, the Mississippi Court of Appeals held that the statute of limitations for an alienation of affections claim begins to run when the alienation or loss of affection is finally accomplished. 962 So.2d at 631. The <u>Hancock</u> court also held that in determining when the statute of limitations begins to run, only the affections of the spouse involved in the extramarital relationship are relevant.

However, the Hancock Court did not address whether the statute of limitations for an alienation of affection claim may be tolled by the latent injury exception set forth in Miss. Code Ann. § 15-1-49(2).

Nonetheless, this Court has determined that even if the latent injury exception applies, the plaintiff's claim for alienation of affection is time-barred. If the plaintiff's alleged injury resulting from the alienation of affection is deemed a latent injury under § 15-1-49(2), the Court concludes that the statute of limitations began to run in January 2001, the time when the plaintiff knew about her injury or by reasonable diligence should have discovered her injury. In her deposition, Ms. Bristow stated:

> Mr. Rutland: Okay, when did he [Mr. Bristow] bring her [Ms. Baskerville] out publicly?
>
> Ms. Bristow: I would say probably in 2001.
>
> Mr. Rutland: Okay.
>
> Ms. Bristow: And I think I met her in 2002. I say 'probably' because I can't be exact on those dates.
>
> Mr. Rutland: Well since you said he brought her out publicly in 2001, was that at an event?
>
> Ms. Bristow: Yes.
>
> Mr. Rutland: Where?
>
> Ms. Bristow: In Chicago. Indigo. He [Mr. Bristow] is very good friends with the person that owns *Indigo Magazine*, and he always came back for that black tie event. And the year he came - one year he came back, and it could have been '01, he brought Lezli, and the whole town was talking and still talking.

>    Mr. Rutland: What were they saying?
>
>    Ms. Bristow: 'I can't believe he did that. Who is she?' I mean, I don't want to get into gossip, you know what I mean, but it was -- it was pretty clear that he had moved on with his life. Let me just say that.
>
>    Mr. Rutland: And moved on with Lezli Baskerville?
>
>    Ms. Bristow: Right.

From Ms. Bristow's testimony, it is clear that she knew about her injury and the relationship between Ms. Baskerville and Mr. Bristow in January 2001, and the claim should have been brought in or before January 2004.

On the other hand, if the latent injury exception does not apply to an alienation of affection claim, as the defendant argues, then the statute of limitations began to run when Mr. Bristow's affections were alienated, which was no later than January 2001, but perhaps as far back as 1999 when Mr. Bristow stopped visiting Ms. Bristow in Chicago and she filed for divorce.[6] Therefore, the plaintiff's claim should have been filed in or before January 2004. Inasmuch as the plaintiff did not file her claim until November 5, 2008, the Court finds that, under either scenario, the plaintiff's claim is time-barred.

---

[6] For the purpose of this Opinion and Order, the exact date when Mr. Bristow's affections were alienated is not determinative of the Court's decision. Whether his affections were alienated in 1999 or January 2001, the statute of limitations period was three years and, therefore, it ended before November 5, 2008, when the plaintiff filed her complaint.

2. *Adultery and Negligent and Intentional Infliction of Emotional Distress Claims*

In regard to the plaintiff's allegation of adultery, the Court finds that this is not an actionable claim under Mississippi law. Only two statutes in Mississippi directly address adultery. The first, Miss. Code Ann. § 93-5-1, provides that adultery is one of twelve causes of action for divorce. The second, Miss. Code Ann. § 97-29-1, is a criminal statute regarding unlawful cohabitation and the statute provides punishments of a fine in any amount not to exceed $500.00, and imprisonment in the county jail for not more than six months. Neither statute creates a civil cause of action for adultery. Saunders v. Alford, 607 So. 2d 1214, 1219 (Miss. 1992). Originally, adultery was an element of the common law tort of criminal conversion. However, that cause of action was abolished by the Mississippi Supreme Court in 1992. Id. For these reasons, the defendant is entitled to summary judgment as a matter of law as to the plaintiff's claim for adultery.

As to the plaintiff's claims for negligent and intentional infliction of emotional distress, the Court finds that those claims are barred by the statute of limitations. The statute of limitations for intentional infliction of emotional distress is one-year. MISS. CODE ANN. § 15-1-35; Randolph v. Lambert, 926 So. 2d 941, 946 (Miss. App. 2006). The statute of limitations for negligent infliction of emotional distress is three years. Randolph, 926 So. 2d at 946. To "'recover emotional distress

13

damages resulting from ordinary negligence', . . . [the plaintiff must prove] 'some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant.'" Id.(quoting American Bankers' Ins. Co. of Florida v. Wells, 819 So. 2d 1196, 1208 (Miss. 2001)). The plaintiff must show that the defendant's conduct was "malicious, intentional, willful, wanton, grossly careless, indifferent or reckless.'" Id.

As support for her claims of negligent and intentional infliction of emotional distress, the plaintiff asserts that since she learned about the alleged extra-marital affair between Mr. Bristow and Ms. Baskerville, she has suffered from "sleepless nights, headaches, dizziness, extreme temper fluctuations, loss of appetite, and have [sic] had an adverse effect on her job performance." Complaint ¶ 37. However, as stated previously, the plaintiff became aware of the alleged extra-marital affair between Mr. Bristow and Ms. Baskerville in January 2001. Thus, the statute of limitations for both claims began to run at that point. As a result, the plaintiff's claim for intentional infliction of emotional distress should have been filed no later than January 2002, and her claim for negligent infliction of emotional distress should have been filed no later than January 2004. Yet, the plaintiff did not file her claim until November 5, 2008. For these reasons, the plaintiff's claims are time-barred, and the defendant

is entitled to summary judgment as a matter of law.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's Motion for Summary Judgment [docket entry no. 31] and Supplemental Motion for Summary Judgment [docket entry no. 36] are **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 17th day of May 2010.

                                             s/ David Bramlette

                                            **UNITED STATES DISTRICT JUDGE**